UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BENTON DIVISION

**E. DRAKE**                     CASE NUMBER:  18-CV-716-NSR-RJD

*Plaintiff*

VS

**JONES LANG LASALLE SERVICE INC.**

*Defendants*

## ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, E. Drake hereinafter referred to as "Plaintiff" and bring this action against the above Defendant and for cause of action would show as follows:

1.      Defendant Jones Lang LaSalle Service Inc., shall be referred hereon as, "JLL," or Jones Lang, or as Defendant.

### I. NATURE OF THE ACTION

2.      Plaintiff was a patient of a dentist, Kevin Potts, who presently practices in a building, Preston Plaza that JLL manage, own and or operates. After the Plaintiffs initial examination with Potts, he was *unable* to obtain any future dates to have any further dental services, including scheduling an appointment with Dr. Potts himself. Shortly thereafter, the Plaintiff requested that Dr. Potts refund all payments that the Plaintiff had made for his initial examination. Plaintiff decided to seek another health care professional to treat and service his dental needs. Dr. Kevin Potts shall be referred as "Potts," or "Dr. Potts" hereon.

3.      Potts appeared to agree to refund the Plaintiffs initial funds, but the dentist employees apparently had other intentions for the Plaintiff. When the Plaintiff arrived at the

1

dentist office of Potts to pick up the funds as agreed, he was asked to wait. But the Plaintiff felt that there was a problem and advised one of Potts staff that he was leaving the office. At that time an employee by name of name of Porchia gave the Plaintiff the money but only after another one of Potts employees by the name of Kim told her to do so. However, when the Plaintiff left the dental office without a problem, Porchia and Kim began to follow the Plaintiff. Both Porchia and Kim intended to ride the elevator to the first floor with the Plaintiff. But the Plaintiff refused to ride in the same elevator with either of them, who suddenly claimed that they felt uncomfortable with the Plaintiff.

    4.     As an alternate, the Plaintiff chose to take the stairs on the north side of the building, but when he got to the second floor, Porchia was running toward him in an aggressive manner. Plaintiff felt threatened and proceeded to leave the building through a side door. Shortly thereafter a security guard who is employed by JLL ran after the Plaintiff, (outside of the building) which the Plaintiff felt even more threatened and the security guard said, "You are barred from coming back in this building."

    5.     The security guard also made racial slurs towards the Plaintiff. Even though the security guard was an African American, and so is the Plaintiff, the racial comment and threats, along with barring the Plaintiff out of the building violated the Plaintiffs constitutional rights as pled herein, and thus the Plaintiff files this petition to redress this matter.

    6.     Jones Lang LaSalle Service, Inc can be served with summons and complaint through its agent of service: Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, IL 62703. Defendant JLL agent of service in Texas is: Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701.

### III.  JURISDICTION & VENUE

7.      Plaintiff invokes this Court's jurisdiction of this action under federal question, the First and Fourteenth Amendments of the United States, and pursuant to 42 USC § 1983, Civil Rights Act of 1964: 42 USC § 2000a, § 2000a-2, §2000a-3, § 2000a-1, §2000b-2, 28 USC § 2201, 28 U.S.C. § 1331, 1343. And supplemental jurisdiction under 28 U.S.C. § 1367, over state law violations.

8.      Jurisdiction is conferred on this Court by 28 U.S.C. §1331, because this action arises under the Constitution and laws of the United States, which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of U.S. citizens.

9.      Plaintiff pleads pendent venue. Plaintiff pleads supplemental jurisdiction under 28 U.S.C. § 1367, over state law claims. Plaintiff pleads multiparty action pursuant to 28 USC §1391(g), and 28 USC §1391(a)(1), (b)(1). This Court has jurisdiction pursuant to 28 U.S.C § 1332 because the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

10.     Plaintiff invokes the Court's jurisdiction of this action under USC § 1331, 1332. Plaintiff claims federal jurisdiction pursuant to Article III § 2, which extends the jurisdiction to cases arising under the U.S. Constitution.

11.     This Court has personal jurisdiction over Defendant JLL because the Defendant is licensed and doing business in this district and venue, and is authorized to do business in Illinois and registered with the Illinois Secretary of State.

12.     Venue is proper in the United States District Court, and in this district and venue pursuant to 28 U.S.C. § 1391.

3

## FACTUAL BACKGROUND

13.     Jones Lang LaSalle Service, Inc owns, manage and operates the Preston Sherry Plaza building located at: 8201 Preston Rd, Dallas, Texas. Dr. Kevin Potts DDS, dental office is located inside the Preston Sherry Plaza building.

14.     Plaintiff sought dental treatment from Dr. Kevin Potts, hereon referred to as "Potts." The Plaintiff paid an initial fee of $250.00 for Potts to evaluate his mouth for his dental needs. After speaking with Potts directly, the Plaintiff was examined by Potts dental hygienist. While the Plaintiff was speaking to Potts and the dental hygienist, Potts employee, Porchia was standing behind the Plaintiff as if he was going to harm Potts or the hygienist. This conduct and mental behavior is vital in understanding the facts that led to this lawsuit.

15.     The Plaintiff had wisdom teeth that needed to be extracted first, and after he first had that procedure, he re-contacted Potts office for a teeth cleaning. But Potts office could not give the Plaintiff any date to have his teeth cleaned—not even 6 months or a year from the date he requested his teeth cleaned in February of 2018. Of course, not given any date was not acceptable, because the Plaintiff needed a cleaning of his teeth badly.

16.     The following day in February of 2018, the Plaintiff re-contacted Potts office and requested an appointment to speak with Dr. Potts because a tooth that wasn't a wisdom tooth was given the Plaintiff ongoing pain. But the Plaintiff was told by Potts office that they likewise could not schedule a date with Potts, at any time, even in the future. Therefore, the Plaintiff wrote Potts a letter and requested that his office return refund his initial money that he paid, and that the Plaintiff would seek dental treatment with another dentist.

17.     Potts apparently agreed. Porchia, the financial coordinator, contacted the Plaintiff and said that Potts decided to return Plaintiffs money from the initial examination.

4

She then requested that the Plaintiff meet her downstairs on the first floor of the building, rather than coming up to pick up the funds from the office. Of course, the Plaintiff instinct told him that it appeared that there was a problem with that plan—so Plaintiff told Porchia that he was out of town, and that he would send someone else to pick up the money. But the Plaintiff was in town, but he was trying to avoid and conflicts or problems.

18.     The following Monday, in February of 2018, the Plaintiff arrived at Potts office. When Porchia saw the Plaintiff, her eyes were open as if she had seen a ghost. The Plaintiff asked her why is she looking that way. Porchia stated, "You said that you were out of town." Plaintiff asked for the funds, but right away Porchia attempted to delay the Plaintiff and asked him to have a seat. The Plaintiff sensing that Porchia was trying to delay the matter or do something that was not right advised Porchia, "Either you give me the money or I am going to leave." At that time the Plaintiff turned to walk out of the dental office of Potts, and Kim, the other employee of Potts said, "Just give him the money."

19.     When the Plaintiff walked out of the office to the elevators, Porchia and Kim followed the Plaintiff. Porchia said, "We don't feel comfortable with you Mr. Drake." However, Porchia and Kim were going to get into the elevator with the Plaintiff and ride down to the first floor. Rather than having any type of allegations made against the Plaintiff that were not true, the Plaintiff refused to ride in the same elevator with Potts employees Porchia and Kim. Plaintiff then took the steps to exist the building.

20.     Plaintiff is in his 60s, and has very bad knees and walking up steps is painful. When the Plaintiff got to the second floor, he was going to take the elevator to the first floor but Porchia had made it down to that floor and began running towards the Plaintiff. This is the same person that said that she was uncomfortable with the Plaintiff, but now she is running towards the Plaintiff.

21.     Plaintiff saw Porchia's actions as a threat to his safety and was prepared to defend himself, but tried to avoid any further contact with Porchia because of her unstable conduct. Once the Plaintiff exited the side door of the building that JLL managed, owned, and or operated, the building security guard came running towards the Plaintiff. And the Plaintiff felt threatened again, and was prepared to defend himself, and or stand his ground. The security office got within 12 feet of the Plaintiff and said, "You are not to come back on the property." Plaintiff replied, "Sir you are threatening me, please say where you are." Then the security guard said in a much lower tone of voice, "Nigger you are not welcome back in this building." The Plaintiff turned and walked away—attempting to defuse the matter.

22.     Within 30 minutes of the incident the Plaintiff made contact with the security guard, and asked his name, and to verify the fact that the security guard had banned the Plaintiff out of the building and why. The security guard said he took the action because Potts office doesn't want the Plaintiff in the building any longer. Plaintiff did not ask the security guard about calling him a Nigger, he wanted information, and not to agitate the tensed matter any further. Plaintiff then called JLL corporate headquarters but wasn't able to speak with the CEOs assistant. Thereafter, the Plaintiff located an email for the CEO of JLL, Christian Ulbrich, and forwarded directly to him by email on February 19, 2018, asking for Mr. Ulbrich assistance in the matter.

23.     Rachel Barner, apparent assistant to Mr. Ulbrich made contact with the Plaintiff on February 22, 2018 by email. She appeared to be sincere in desiring to understand the facts of what occurred at one of JLL buildings. But in speaking with Ms. Barner she asked the Plaintiff why do you need to go back into the building. The Plaintiff found this statement to be a violation of his constitutional and First Amendment free speech rights, and it was an insult to the Plaintiff because that JLL had already banned the Plaintiff from Preston

6

Plaza without any evidence to substantiate such a claim. This position was irrationally made on behalf of JLL, and the Plaintiff was essentially sentenced to banishment from the building strictly on account of his race, African American. What conversations that occurred between Dr. Potts employees and the security guard is unknown at this time. However after that, all conversation with Ms. Barner and communications between the Plaintiff and JLL ceased. The Plaintiff had found another dentist that was in the same building that Potts practice in, Preston Plaza, but after such treatment and hostilities, the Plaintiff could not take the chance on any additional incidents. Although a building may be privately owned, because it is accessible to the public, to bar any person from entering the entire building without just cause is a violation of the Plaintiffs rights. The Plaintiff should not have to obtain permission or advise JLL of what other businesses that he is going to visit, unless there is a credible threat on the record where the police was summoned, or a threat of violence of some kind or a threat to do bodily harm or even a departure from the professional environment.

24.     If Potts employees claim that they were frightened of the Plaintiff, then why would they get into an elevator with the Plaintiff, and run after him if they were so frightened of the Plaintiff. This case is partly about a white tenant in a building owned, operated, and managed by JLL who apparently decided that if the Plaintiff is not going to be treated by him and his staff, then there is no reason for the Plaintiff to be treated by other medical professionals located in that building or unitize any other businesses in that building. This position is also a violation of Plaintiffs first amendment rights. Potts and his employees had a trap waiting for the Plaintiff when he showed up to pick up his funds. The trap was obvious and there was a conspiracy between Potts, his staff, with an employee of JLL, the security guard. Insult to injury, JLL asked the Plaintiff for what reason did he need to go back into the building, which is also a violation of the Plaintiffs rights.

7

25.     Moreover, the Plaintiff has been using professionals in that immediate area for over 30-years. He has attended church within walking distance of Potts office for over 30-years, and he has shopped, dined, and used other businesses in the area for over 30-years. In fact, the Plaintiff has dined in one of the restaurants in the Preston Plaza building and has also used the bank in that building. Therefore, the actions of JLL and its security guard are reprehensible, and stark racism and a violation of the Plaintiffs constitutional rights.

26.     The security guards racial slur and his comment about the Plaintiffs is without question race discrimination. Black people can discriminate against other black people. This is true, especially in cases where dark skinned blacks who discriminate against lighter skin blacks. The security guard is a darker skinned black male, and the Plaintiff is lighter skin African American.

27.     Furthermore, any upset of the professional environment in the building would have to come from Potts and his employee's conduct and the conduct of JLL employee. The circumstances as pled herein could have been have resulted in physical injuries, but the Plaintiff retreated for his safety, and the safety of other tenants, and to avoid a physical altercation.

## **FIRST CAUSE OF ACTION**

**COUNT 1**

## **RACE DISCRIMINATION**

28.    Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

29.    Plaintiff would show that he was the victim of unlawful practices based on his race (Black) or (African American) and because of his race the Defendant JLL and its employees discriminated against him as specifically set forth below:

a.    Plaintiff is an African American male.

b.    Plaintiff sought the treatment of a dentist, Kevin Potts, who has his place of business in a building owned, operated, and or managed by Defendant JLL in Preston Plaza.

c.    After the initial visit with Dr. Potts on November 28, 2017, the Plaintiff was not able to obtain *any* dates for his further dental treatment, nor was the Plaintiff able to obtain *any* dates to see the doctor. The Plaintiff logically suggested to Dr. Potts by written letter delivered to his home on February 14, 2018 that he be allowed to seek the dental treatment of another dental professional, and that the initial money paid to Potts be refunded.

d.    Dr. Potts did not respond to the Plaintiffs letter directly, but one of his assistants by the name of Porchia did contact him and said that the doctor agreed to return Plaintiffs initial funds. However, Porchia wanted the Plaintiff to meet her downstairs of the building at a particular time, which did not make any sense to the Plaintiff.

e.    Since the Plaintiff believed that the meeting might cause some type of incident, he advised Porchia, that he was out of town and that he would send someone else to

9

pick up the funds. But Porchia said that she the Plaintiff to come and pick up the money, which seemed like a reasonable request to make sure that the Plaintiff did not claim that he didn't receive the funds, yet the Plaintiff, had his doubts. On February 19, 2018 Plaintiff appeared at Potts office for the funds, Porchia was surprised and she told the Plaintiff to take a seat. But the Plaintiff sensing that there was a problem advised Porchia to either give him the money or he was leaving the office. Kim, another employee of Potts told Porchia to give the Plaintiff the funds. Thereafter, Porchia and Kim followed the Plaintiff to the elevator. Plaintiff refused to ride on the same elevator with Potts employees. Porchia said that we are uncomfortable with you Mr. Drake. But how is it possible that a person who is uncomfortable with someone would get into a closed spaced box of an elevator with that person? Plaintiff took the stairs sensing that there could be an incident developing. After the Plaintiff got to the second floor, Porchia was running towards him fast. At that point the Plaintiff felt threatened and was ready to use whatever force necessary to defend himself.

      f.      Once the Plaintiff reached the ground floor, he retreated from the building so that there would be no need to continue to have any interfacing or communications with Potts employees. But then, the security guard employed by JLL began to chase after the Plaintiff, but the Plaintiff kept walking. Then the Plaintiff stopped and was ready to *stand his ground* in case the Plaintiff saw a weapon drawn by the security guard. The security guard advised the Plaintiff that he is no longer welcome to come to the building, and then the guard made inappropriate comments to the Plaintiff. The security guard as an employee for JLL violated the Plaintiffs constitutional rights and his First and Fourteenth amendment rights.

      g.      Plaintiff has been harmed by the intentional actions of Defendant JLL and its employees. JLL motives were based strictly on the Plaintiffs race, African American. Plaintiff has no other amiable remedy but to take this action by this lawsuit to resolve this

issue and to requests of the Court appropriate protection through an injunction.

h.    Defendant JLL, its employees, and one of its tenants conspired to harm the Plaintiff on account of his race, African American.

i.    Defendant JLL and its employee's actions have also caused the Plaintiff embarrassment and emotional distress.

j.    The reckless but intentional actions of Defendant JLL and its employees can be easily viewed as intent to injure the Plaintiff.

## SECOND CAUSE OF ACTION

### COUNT 2

### FIRST AND FOURTEENTH AMENDMENT RIGHT VIOLATIONS

30.    Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

31.    All of the aforementioned acts of defendants, their agents, servants and employees were carried out under the color of law.

32.    All of the aforementioned acts deprived Plaintiff Eric Drake, a member of a racial minority and a protective class, of the rights, privileges and immunities guaranteed to citizens of the United States by the Constitution of the United States of America, and in violation of his First and Fourteenth Amendment rights.

33.    The First and Fourteenth Amendments extend to public buildings where they are generally accessible to the public. *Healy v. James*, 408 U.S. at 180. The Plaintiffs ability to conference with medical professionals about his medical/dental needs located in a building JLL owns, manages, or operates, the Preston Plaza building, constitutes speech.

34.    All of the acts of Defendant JLL, their officers, agents, employees, and

servants were executed, and are continuing to be executed by the Defendant JLL have and will continue to cause harm to the Plaintiff.

35.     Defendant JLL bears the burden of justifying any regulation of expressive activity or access in the public areas in the buildings that it owns, operates, and manages.

36.     By prohibiting Plaintiffs' lawful activities access to dinning in restaurants, and conducting business at a bank inside the Preston Plaza is a violation of the 1st and 14th Amendment. Further, by violating Plaintiffs free speech with other health care professionals to treat him that are located in the Preston Plaza building is also a violation of the Plaintiffs First and Fourteenth Amendment rights. JLL has explicitly and implicitly chilled Plaintiffs' free speech expression, and association. Defendant has deprived Plaintiffs of their clearly established rights to freedom of speech and expression secured by the First and Fourteenth Amendments to the U.S. Const. An individual's right to remain in a public place, standing alone, is a liberty interest protected by the Fourteenth Amendment. The Supreme Court has held that an individual has a liberty interest "to remain in a public place of his choice." *City of Chicago v. Morales*, 527 U.S. 41, 54, 119 S. Ct. 1849, 144 L. Ed. 2d 67 (1999).

37.     Defendant JLL through its employees violated clearly established constitutional rights of the Plaintiff, which a reasonable minded security guard and assistants to the CEO and other staff of JLL should have known that they were violating the Plaintiffs rights, which render them liable to the Plaintiff under 42 U.S.C. § 1983.

38.     The denial of constitutional rights is irreparable injury *per se*, and the Plaintiff, Eric Drake, is entitled to declaratory and injunctive relief. As a consequence of being denied his First and Fourteenth Amendment rights by JLL, including but not limited to the ability to dine in a restaurant, have access to a bank, and conference with medical/dental professionals in a building that JLL owns, or manages; Plaintiff has experienced significant

emotional pain and anguish and embarrassment.

39.     Plaintiff is therefore entitled to a declaration that Defendant JLL violated his First and Fourteenth Amendment rights. Additionally, Plaintiff is entitled to damages in an amount to be determined by the evidence submitted to this Honorable Court, and the reasonable costs of this lawsuit, including reasonable attorneys' fees.

## THIRD CAUSE OF ACTION

**COUNT 3**

## FACIAL CHALLEGNGE TO VIOLATION OF RIGHT TO FREE SPEECH UNDER THE FIRST AND FOURTEENTH AMENDMENTS (42 USC §1983) —PRIOR RESTRAINT

40.     Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

41.     Plaintiff is a natural born citizen of the United States. He has rights under the laws of this country. Plaintiff Eric Drake have a First and Fourteenth Amendment right to engage in expressive activities, to speak with other medical professionals about his medical or dental needs, and the right to use public areas of a building that he has used previously to dine and conduct banking business without obtaining advance permission from the management company, Defendant JLL. But since the Defendant has banned the Plaintiff from the Preston Plaza building, unfairly, and without just cause, Plaintiff has been harmed.

42.     When the CEO assistant, Rachel Barner, asked Plaintiff what other doctors do you wish to see and who do you need to visit in the building, it would be considered as "a permitting requirement," which is a restraint on speech and therefore bears a heavy presumption against its constitutionality. *Berger v. City of Seattle*. The presumptive invalidity

and offensiveness of advance notice and permitting requirements stem from the significant burden that it places on free speech. And in this case, on account of the Plaintiffs race, black, he is permanently banned from the entire building. When the Plaintiff spoke with JLL's security guard, he did not reveal that there were any affidavits, sworn statements, police reports, or written complaints in his possession when he chased down the Plaintiff and made racial slurs and posted him out the Preston Plaza building. JLL conduct violated the Plaintiffs free speech and association, which is also a violation of the Plaintiffs rights.

43.     The policies and conduct of Defendant JLL of even wanting to restrict the Plaintiff access to the entire Preston Plaza building restricts all First and Fourteenth Amendment protected speech by requiring an indication that the Plaintiff would have to provide advanced notice to engage in seeking the advice of other health care providers by conferencing with them about the Plaintiffs medical/dental condition, or dinning at the restaurant or conducting business at a bank, which all are located within the Preston Plaza building before conducting such activity before allowing expressive such activities constitute an unconstitutional prior restraint on First and Fourteenth Amendment rights.

44.     As a direct result of the Defendant JLL continued discriminative conduct against the Plaintiff, he have been, and will continue to be, irreparably injured in that he have been, and will be, deprived of his right to free speech under the First and 14th Amendments to the Constitution. Moreover, "[t]he loss of First Amendment freedoms is presumed to constitute an irreparable injury for which money damages alone are not adequate, and injunctions protecting First Amendment freedoms are always in the public interest."

45.     As a consequence of the Defendant JLL violation of Plaintiffs' First and Fourteenth Amendment rights, the Plaintiff, Eric Drake, is entitled to injunctive relief, and the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

## FOURTH CAUSE OF ACTION

**COUNT 4**

## FAILURE TO INTERVENUE UNDER 42 U.S.C. § 1983

46.    Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

47.    Defendant JLL upper management had an affirmative duty to intervene on behalf of Plaintiff, Eric Drake, whose constitutional rights had been violated by one of its employees, a security guard that was employed on or about February 19, 2018.

48.    The Plaintiff forwarded an email to the CEO of Defendant JLL, Mr. Christian Ulbrich on February 19, 2018. The email was sent directly to Mr. Ulbrich's email and not to an assistant or secretary.

> "My name is Rev. Eric Drake. I am an African American. I was at one of the buildings that JLL owns or leases (Preston Sherry Plaza). The security guard claims that he is employed by JLL advised me that I was not allowed back into the building because of a dispute that I had regarding Dr. Potts, who is a local dentist. Legally, I can see not coming back to Dr. Potts office, but to be barred from the entire building will cause litigation to be filed."

49.    Unfortunately, Mr. Ulbrich assistant desired to restrict the Plaintiffs activities in the Preston Plaza as pled herein, and offered no solution to the Plaintiffs complaint, but instead caused additional violations of the Plaintiffs free speech under the First and Fourteenth Amendment. JLL was not concerned about how the Plaintiff was humiliated, after being chased by one its security guards, as if he was a criminal, on account of Plaintiffs race, black.

15

50.     As a result of the foregoing, Plaintiff, Eric Drake, is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the Defendant JLL in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursement of this action.

## FIFTH CAUSE OF ACTION

**COUNT 5**

### SUPERVISORY LIABILITY UNDER 42 U.S.C. § 1983

51.     Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

52.     For the reason that the security guard is employed by JLL and not an outside security company, the CEO of Defendant JLL, Mr. Christian Ulbrich, is the security guard's supervisor. And most certainly Mr. Ulbrich's is the supervisor of his assistant, Ms. Barner. The security guard and Ms. Barner's lack of proper training led to the harm caused to the Plaintiff as pled herein, which caused constitutional injury to the Plaintiff by deliberately or consciously indifferent to the rights of others in failing to properly supervise and train the security guard and Mr. Ulbrich's own personal assistant, Ms. Barner. Possibly the security guard is trained to treat people of color differently than he would white people. This is not a uncommon practice in this nation. The Preston Plaza is located in one of the most richest communities in the United States, Highland Park—where the past presidents resides and many celebrities. The possibility of this guard chasing a white person in that community would be less than one percent. And even if he did by some remote chance, JLL would not have taken the same position as Mr. Barner took with the Plaintiff.

53.     As a result of the foregoing, Plaintiff, Eric Drake, is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the Defendant JLL in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursement of this action.

16

## SIXTH CAUSE OF ACTION

**COUNT 6**     **VIOLATION OF 42 USC § 2000a DISCRIMINATION**

54.     Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

55.     All of the aforementioned acts of Defendant JLL's security guard, who is an employee of the defendant, were carried out under the color of law.

56.     All of the aforementioned acts of the Defendant deprived the Plaintiff, Eric Drake, a member of a racial minority and a protective class, of the rights, privileges and immunities guaranteed to citizens of the United States by the Constitution of the United States of America, and in violation of 42 U.S.C. § 2000a.

57.     All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.

58.     Even though the Plaintiffs dentist failed to adequately treat his dental needs, and the Plaintiff requested a refund of his initial funds that he paid the dentist, this was not a justification for JLL's employee to discriminated against the Plaintiff and violate his constitutional rights. The Plaintiff was not disorderly at any time while he was in the Preston Plaza building; therefore he had a right to enjoy the public accommodations without being chased down as if he had committed a crime in the building.

59.     Once the Plaintiff was safe, he made contact with the security guard who used racial slurs to him and verified that the guard advised him that he was no longer welcome at

17

the Preston Plaza building. The guard verified that he advised the Plaintiff that he was banned from the building, not just from Dr. Potts office. The security guard also advised the Plaintiff that Dr. Potts office said that they don't want the Plaintiff in the building. Prior to the Plaintiff picking up his funds, there were no indications by Potts office that there was a problem with the Plaintiff coming to his dental office. There has never been an incident that occurred in Potts office between the Plaintiff and any of Potts staff, at least not until the Plaintiff came to Potts office to pick up his funds on or about February 19, 2018.

60.     The Plaintiff has dined several times at "Sevy's" which is located in the Preston Plaza building, where Potts office is also located, but the restaurant is located on the first floor and Potts on the fourth floor. Since Sevy's is in the same building, JLL banning the Plaintiff out of the entire building also bans the Plaintiff from this well-known eating establishment. JLL thus violated the Plaintiffs protective rights under the First and Fourteenth Amendment rights and Plaintiffs right of association. *City of Chicago v. Morales*. 42 USC § 2000a, encompass under sub section (4) "any establishment (A)(i) which is physically located within the premises of any establishment otherwise covered by this subsection, or (ii) within the premises of which is physically located any such covered establishment, and (B) which holds itself out as serving patrons of such covered establishment."

61.     Moreover, the Plaintiff has transacted business at that Bank of Ozark previously, which is located in Preston Plaza building, but now the Plaintiff is also banned from using that bank. This is also a First and Fourteenth Amendment violation.

62.     The Plaintiff has been harmed by the actions of JLL and its employees that has banned him unjustly from a public place and businesses within the Preston Plaza building in which the Defendant owns, manages, or operates.

63.     As alleged herein, as direct and proximate result of JLLs conduct and actions,

18

Plaintiff Drake has suffered injuries. Plaintiff continues to suffer, because he is banned from a public place unjustly on account of the unfair and discriminatory acts by Defendant JLL.

### SEVENTH CAUSE OF ACTION

**COUNT 7     EQUAL PROTECTION — 42 USC § 1983**

64.     Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

65.     As alleged herein, as a direct and proximate result of the Defendant JLL discriminatory, unfair, and biased actions pursuant to 42 USC § 1983, Plaintiff pleads a cause of action against the Defendant JLL for violation of his equal protection rights, constitutional rights, and have discriminated against Drake. Plaintiff further shows as follows:

a).     Plaintiff is a citizen of the United States of America within the meaning of Title 42 and belongs to a protected class under the statute, namely his race, African American.

b).     The actions of Defendant JLL were intentional which caused Plaintiff damages.

66.     Defendant JLL denied Plaintiff an equal opportunity to dine at a public place ("Sevy's") a restaurant, and to use a public place (Bank of Ozarks) a bank, that are located in a building Defendant JLL owns, operates, or manages, solely on the actions taken against the Plaintiff by JLL and its agents, representatives, and employees.

67.     Plaintiffs right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution was violated by this denial of equal access to public places such as a bank and a restaurant as pled herein. *City of Chicago v. Morales*.

68.     Plaintiff has a cause of action for violation of her constitutional right to equal protection, under the Civil Rights Act, 42 U.S.C. § 1983.

69.    As alleged herein, as direct and proximate result of the Defendant JLL negligence, intentional wrongful conduct, Plaintiff Drake has suffered injuries. Plaintiff continues to suffer, because he is banned from the public places named herein, unjustly on account of discriminatory acts by Defendant JLL, therefore, JLL violated equal protect laws. The Plaintiff request injunctive relief against Defendant JLL.

## EIGHTH CAUSE OF ACTION

**COUNT 8    NEGLIGENCE AND GROSS NEGLIGENCE**

70.    Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

71.    Defendant JLL owed the Plaintiff a duty to use reasonable ordinary care in the manner in which its employees interface with the Plaintiff. The actions of running, or chasing the Plaintiff down as if he was a run-away slave speaks for itself as gross negligence, but purposely driven on account of racism and fragrant violations of the Plaintiffs rights.

72.    Defendant JLL and its employees were negligent in one or more of the following negligent acts and or omission:

a).    Failing to use due care in speaking to the Plaintiff;

b).    Failing to adhere to reasonable care regarding the Plaintiff, like the Defendant JLL would if the Plaintiff was a white business man;

c).    Threatening the Plaintiff by chasing after him, and then using racial slurs to demean the Plaintiff in an apparent attempt to provoke a physical altercation;

20

d). Relying on hearsay from a white tenant, and its staff in the building, rather than speaking directly to the Plaintiff, who is black over the telephone to determine the facts of the matter before making any decisions to ban him from the Preston Plaza building;

e). Defendant JLL otherwise was careless and negligent.

73. Defendant JLL knew or should have known that their actions would cause harm to the Plaintiff. Defendant JLL though its employees chose to discriminate against the Plaintiff, and caused harmed to him by their purposely driven negligent and racially inclined conduct.

74. As alleged herein, as direct and proximate result of the Defendant JLL negligence, intentional wrongful conduct, Plaintiff Drake has suffered injuries. Plaintiff continues to suffer, because he is banned from public places unjustly on account of discriminatory acts by Defendant JLL, therefore, Plaintiff also request injunctive relief against Defendant JLL.

## NINTH CAUSE OF ACTION

**COUNT 9**

## VIOLATION OF 42 U.S. CODE CHAPTER 21—CIVIL RIGHTS

75. Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

76. All of the aforementioned acts of Defendant JLL's security guard, who is an employee of the defendant, were carried out under the color of law.

77.     All of the aforementioned acts of the Defendant JLL deprived the Plaintiff, Eric Drake, a member of a racial minority and a protective class, of the rights, privileges and immunities guaranteed to citizens of the United States by the Constitution of the United States of America, and in violation of 42 US Code, §2000a-2, and §2000a-3.

78.     All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.

79.     The security guard employed with JLL chased down the Plaintiff, and made racial slurs to him by calling the Plaintiff a Nigger. The security guard that appeared to be in his late twenties, African American, dark skinned completion was aggressive towards the Plaintiff. The guard who was an employee of JLL banned the Plaintiff from entering the Preston Plaza building, thus depriving and interfering with the Plaintiffs rights in violation of 42 USC §2000a-2.

80.     After the incident with JLL's security guard, the Plaintiff spoke with him over the telephone to verify that the guard had banned the Plaintiff from the Preston Plaza building. The security guard said that his name was Dave, in an attempt to hide his full name. However, the guards banning the Plaintiff from a public building without just cause, is a violation of 42 US Code subchapter II, public accommodations. Thus, the Plaintiff is banned from dinning in the future at "Sevy's" which is located in the Preston Plaza building, and the Bank of Ozarks, which is also located in the Preston Plaza building.

81.     Plaintiff asks this honorable court for relief against said discrimination and unfair rights pursuant to 42 USC §2000b-2.

22

82.     The Plaintiff likewise plea for injunctive relief pursuant to § 2000a-3 of Title 42 US Code.

83.     The Plaintiff has been harmed by the actions of JLL and its employees that has banned him unjustly from a public place and businesses within the Preston Plaza building in which the Defendant owns, manages, or operates.

84.     As alleged herein, as direct and proximate result of JLLs conduct and actions, Plaintiff Drake has suffered injuries. Plaintiff continues to suffer, because he is banned from a public place unjustly on account of the unfair and discriminatory acts by Defendant JLL.

## TENTH CAUSE OF ACTION

**COUNT 10**

## DECLARATORY JUDGMENT AND INJUNCTION (28 USC § 2201, et seq)

85.     Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

86.     An actual controversy has arisen and now exists between the Plaintiff and Defendant JLL concerning Plaintiffs' rights under the United States Constitution. A judicial declaration is necessary and appropriate at this time as to Counts I through VIII above.

87.     Plaintiff desire a judicial determination of his rights against Defendant JLL as they pertain to Plaintiffs' rights of speech, dine in a restaurant that is located in Preston Plaza building, and be able to continue to use as necessary the bank which is also located within the Preston Plaza building that is owned, operated, and or managed by Defendant JLL. Plaintiff refuses to be subjected to a prior restraint or "time, place, and manner" that he is allowed to dine at the restaurant or use the bank, or to conference with prospective health care professionals about his medical/dental needs.

88.     To prevent further violation of Plaintiffs' constitutional rights by Defendant JLL, it is appropriate and proper that a declaratory judgment is issued, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, declaring JLL conduct and policies against the Plaintiff as unconstitutional.

89.     Furthermore, pursuant to 28 U.S.C. § 2202 and Fed. R. Civ. P. 65, it is appropriate, and the Plaintiff hereby request that this Court issue a permanent injunction prohibiting the Defendant JLL from barring the Plaintiff from dining at ("Sevy's") restaurant, and the Bank of Ozark, and from conferencing in person with health care professionals regarding the Plaintiffs medical/dental needs who offices are located in the Preston Plaza. Any suggestions that restricting Plaintiffs activities as pled herein are unconstitutional, thus to prevent the ongoing violation of Plaintiffs' constitutional rights, an injunction is necessary. Plaintiff is suffering irreparable harm from the continued conduct of Defendant JLL and its employee's unconstitutional policies. Monetary damages along are inadequate to remedy this harm, and the balance of equities and public interest both favor a grant of injunctive relief.

24

## **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

90.   Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

91.   Defendant JLL through its employees, representatives, and agents caused intentional infliction of emotional distress upon the Plaintiff.

92.   Defendant JLL conduct was intentional and reckless and it caused intentional infliction of emotional distress by:

a).   Defendant JLL security guard extreme and outrageous conduct of chasing after the Plaintiff as if he had committed a serious crime in the Preston Plaza building;

b).   Defendant JLL security guard's extreme and outrageous conduct of making racial slurs to the Plaintiff and threatening him, which was reprehensible;

c).   Defendant JLL extreme and outrageous conduct of banning the Plaintiff from a restaurant and bank that he has used in the past without any basis for its actions;

d).   Defendants JLL extreme and outrageous conduct went beyond all possible bounds of decency. For the actions of the Defendant was intended to, and did in fact; cause emotional distress which translated to physical pain to the Plaintiff.

e).   Defendant JLL extreme and outrageous behavior and actions would be regarded as atrocious and utterly intolerable in a civilized community.

93.   Defendants JLL extreme and outrageous conduct through its employees, agents, and representative's conduct was a proximate cause of the Plaintiff's emotional distress, injuries, and damages as set forth herein.

94.     To sustain an award for punitive damages, Plaintiff must prove, by a preponderance of the evidence, that Defendant JLL committed a tortious act, and by clear and convincing evidence that the act was accompanied by conduct and a state of mind evincing malice or its equivalent—the Plaintiff can do so with evidence beyond a reasonable doubt.

95.     Since Defendant JLL agents, representatives and employees knew that they were causing the Plaintiff harm; this Court should award punitive damages for Defendant JLL's intentional conduct. Therefore, the Plaintiff is requesting punitive damages for the emotional distress because JLL intended to harm the Plaintiff.

## DAMAGES

96.     As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages. Evidence clearly demonstrates that Defendant JLL through its employee's practices violated the Plaintiffs rights as pled herein. In addition, the Plaintiff plea before this Honorable Court injunctive and declaratory relief pursuant to Defendant JLL conduct as pled herein.

97.     Plaintiff has suffered and is continuing to suffer mental anguish on account of Defendant JLL conduct as described herein. Plaintiff is seeking an order from this Court decreeing that Defendant JLL will pay the Plaintiff damages as set forth herein in this original petition of $2,500,000.00 (two million five hundred thousand dollars).

98.     In addition, Plaintiff by this action, seeks compensatory and punitive damages as pled herein, and damages for deceptive trade practices, expert witness fees, cost, interest, and other causes of actions pled herein and for all other monies and damages to which he may be entitled and:

26

- Attorneys' fees for preparation and trial;

- Attorneys' fees if there is to be an appeal to the Court of Appeals;

- Attorneys' fees if there is to be an appeal to the U.S. Supreme Court;

- Incidental damages;

- Past mental anguish;

- Future and past emotional distress;

1.     Trebled damages for knowingly and willfully causing harm to the Plaintiff;

2.     Plaintiff respectfully requests that the Court grant additional damages as already pled herein including injunctive and declaratory judgment and other causes pled herein.


**PRAYER FOR RELIEF**

99.     WHEREFORE, Plaintiff, Eric Drake respectfully request that the Court enter judgment against Defendant JLL and grant the Plaintiff with the following additional relief:

a).     A declaratory judgment stating that Defendant JLL violated the Plaintiff First and Fourteenth Amendment right to speech is unconstitutional facially and as-applied and that they violate the Plaintiffs' rights as guaranteed under the First and Fourteenth Amendments to the United States Constitution;

b).     A permanent injunction restraining enforcement of Defendants' unconstitutional speech and other practices as set forth herein;

c).    A declaratory judgment that Defendants' banning the Plaintiff from having access to a public restaurant and bank that is located in a building that JLL manage, owns, or operates is unconstitutional. That the Defendant JLL banning the Plaintiff from having access to the Preston Plaza is also unconstitutional and a violation of free speech. That any monitoring of the Plaintiffs activities or forcing him to schedule a time when he will have an appointment with a doctor, or to dine in a restaurant in the Preston Plaza building, or when he needs to associate with other businesses in the Preston Plaza building without prior approval is a violation of the First and Fourteenth Amendments;

d).    Plaintiff demand monetary damages in an amount to be determined by the Court to compensate for the Defendant JLL conduct towards the Plaintiff in violation of his constitutional rights as pled herein;

e).    All other further relief to which Plaintiffs may be entitled.

## ATTORNEYS' FEES, COSTS & INTEREST

100.    Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

101.    Plaintiff hereby sues for the recovery of reasonable attorneys' fees, costs of court, and pre-and post-judgment interest at the highest rates to which he is entitled.

## REQUEST FOR JURY TRIAL

102.    Plaintiff hereby requests a jury trial on all matters set forth in his original petition as pled to this Honorable Court.

28

## PARYER FOR RELIEF

103.   Plaintiff prays for a judgment against Defendant JLL and it agents, employees, lawyers, and representatives as follows:

1.      Special damages for Plaintiff in the amount of $1,000,000.00;

2.      General damages for Plaintiff in an amount to be determined at trial;

3.      Punitive Damages in an amount to be determined at trial;

4.      Cost of suit;

5.      Attorney fees for preparation and trial;

6.      Attorney fees if there is to be an appeal to the U.S. Supreme Court;

7.      Incidental damages in the amount calculated;

8.      Past and future emotional distress;

9.      Trebled damages for deceptive trades practices and trebled damages for willfully causing harm to the Plaintiff;

10.     Prejudgment interest;

11.     Injunctive and Declaratory Relief;

12.     For such other and further relief as the court deems just and proper.

104.    WHEREFORE PREMISES CONSIDERED, Plaintiff hereby prays he is awarded compensatory damages, reasonable attorneys' fees, costs of court and pre-judgment and post-judgment interest at the highest rates to which he is entitled to receive; and for such other proper relief to which Plaintiff is entitled. And grant such other and further relief as the Plaintiff as prayed for in its entirety and as it appears reasonable and just, to which Plaintiff shows himself entitled.

Respectfully submitted,

_____
E. Drake
10455 N. Central Expressway
Suite 109
Dallas, Texas 75231
903-453-7880
legal.litigation.org@gmail.com

Eric Drake
10455 N. Central Expwy
Ste 109
Dallas, Texas 75231

March 28, 2018

U. S. District Court
Clerk of Court
301 West Main Street
Benton, IL 62812

*Drake v. Jones Lang LaSalle Service Inc.*

Dear Clerk:

Please find Plaintiffs original petition, civil cover sheet, summons, and IFP application and order.

Should you have any questions, please contact me at: 903-453-7880 or my email address at: legal.litigation.org@gmail.com It is faster if you email me.

Yours truly,

Eric Drake

*PRESS FIRMLY TO SEAL*

*PRESS FIRMLY TO SEAL*

PRIORITY MAIL LEGAL
SIZE POSTAGE REQUIRED



**UNITED STATES POSTAL SERVICE.**

*Retail*

### P

**US POSTAGE PAID**
## $7.00

Origin: 75260
Destination: 62812
0 Lb 8.00 Oz
Mar 29, 18
4622000202~11

1006

**PRIORITY MAIL 3-Day ®**

Expected Delivery Day: 04/02/2018   | C006 |

**USPS TRACKING NUMBER**

9505 5122 0452 8088 1922 26

10455 North Central Expwy
Ste 109
Dallas, Texas 75231

**TO:**   **U.S. District Court**
**Attn: Clerk of Court**
**301 West Main Street**
**Benton, IL 62812**



MAIL CLEARED
US MARSHALS



PS00001000060

Legal Flat Rate Envelope
EP14L February 2014
OD: 15 x 9.5



VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE



**UNITED STATES POSTAL SERVICE**

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP14L © U.S. Postal Service; February 2014; All rights reserved.

# PRIORITY ★ MAIL ★



TRACKED
★ ★ ★
INSURED



RECEIVED

APR 0 2 2018

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
BENTON OFFICE

## FLAT RATE ENVELOPE
ONE RATE ★ ANY WEIGHT*



P S 0 0 0 0 1 0 0 0 0 6 0

**Legal Flat Rate Envelope**
EP14L February 2014
OD: 15 x 9.5



UNITED STATES
POSTAL SERVICE®